UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WALTER MABRY, et al.,

    Defendants.
_____/

Civil Action No.
04-CR-80977

HON. BERNARD A. FRIEDMAN

**<u>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION, BY FINDING THAT 29 U.S.C. § 186(C)(2) APPLIES ONLY TO SETTLEMENTS REACHED THROUGH LITIGATION OR ARBITRATION</u>**

    This matter is presently before the Court on Plaintiff's Motion for Reconsideration. On September 26, 2005, the Court ruled that 29 U.S.C. § 186(c)(2) applies to any settlement of a dispute that is reached between two parties, regardless of whether those parties were involved in litigation or arbitration. Plaintiff asks the Court to reconsider its decision and to instead find that Section 186(c)(2) does not apply to a settlement or resolution that is reached through merely informal or non-judicial negotiation, held solely between the parties themselves.

    After having reviewed this matter in greater depth, the Court reverses its original ruling. Therefore, the Court finds that 29 U.S.C. § 186(c)(2) applies only to a settlement of a dispute when that settlement is achieved through the adjudicative process.

I.   **SECTION 186 OF THE LABOR MANAGEMENT RELATIONS ACT OF 1947 ("TAFT-HARTLEY ACT")**

Section 186 of the Labor Management Relations Act of 1947 ("LMRA" or "Taft-Hartley Act"), 29 U.S.C. §§ 141 to 187, restricts financial transactions between an employer and a labor organization's representatives or employees.  29 U.S.C. § 186 (1998)[1].  The statute states:

> It shall be unlawful for any employer . . . to pay, lend, or deliver, or agree to pay, lend or deliver, any money or other thing of value—
> (1) to any representative of any of his employees who are employed in an industry affecting commerce; or
> (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce;
> . . . .

Id. at § 186(a).  The statute further prohibits any request for, or acceptance of, such prohibited transactions: "It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section."  Id. at § 186(b)(1).

However, Section 186 does allow for nine narrow exceptions, where conduct that would otherwise be considered illegal is instead deemed to be lawful.  One of these nine exceptions is Section 186(c)(2), which allows for transactions "with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress."  Id. at § 186(c)(2).

The interpretation of Section 186(c)(2) is the issue for reconsideration before this Court.

---

[1] It should be noted that 29 U.S.C. § 186 is the codification of Section 302 of the Labor Management Relations Act.

On one hand, Plaintiff argues that this exception narrowly applies to disputes or claims in a labor-management context, not to mere commercial exchanges between parties. Further, Plaintiff argues that any settlement of a dispute or claim must have been achieved through an adjudicative process, such as ongoing litigation or arbitration between the parties. On the other hand, Defendants assert that the exception's plain language shows that it applies to either a commercial or labor-management context, as long as the payment or other thing of value serves as a settlement or resolution of a claim or dispute between the parties. As Defendants explain, this would mean that a payment between an employer and union officials, as long as it was the result of a voluntary settlement of a dispute between them, should be considered lawful under Section 186(c)(2).

## II.     PLAINTIFF'S MOTION FOR RECONSIDERATION

Our judicial system places a strong emphasis on the efficient and fair resolution of disputes. Sometimes parties can resolve their disputes on their own, independent of the court system. In such a case, we often applaud the parties for being able and willing to settle their problems without having to immerse themselves amidst depositions, motions, and trial dates. Even more so, parties that avoid needless litigation better serve us all, by allowing those who truly require the direction of our courts to achieve justice more quickly.

There are some situations, though, where parties cannot voluntarily opt to operate outside the bounds of our legal system, even if they so desire. In such cases, it is often the parties' heavy fiduciary duties, as well as the possibility to abuse those duties, that causes lawmakers to impose a higher burden on those involved. The arena of collective bargaining seems to be one of these

3

special areas. For instance, the United States Supreme Court has explained that Section 186 was created "to deal with problems *peculiar* to collective bargaining" and "was aimed at practices which Congress considered inimical to the integrity of the collective bargaining process." Arroyo v. United States, 359 U.S. 419, 424-25 (1959) (emphasis added). Similarly, the Sixth Circuit explained that Section 186 "was enacted to deal with problems *peculiar* to labor-management relations." Reinforcing Iron Workers Local Union 426 v. Bechtel Power Corp., 634 F.2d 258, 261 (6th Cir. 1981) (emphasis added). See also United Bhd. of Carpenters and Joiners of Am., Dresden Local No. 267 v. Ohio Carpenters Health and Welfare Fund, 926 F.2d 550, 557 (6th Cir. 1991) (stating "Section 186 as a whole is concerned . . . with any financial transactions between employers and unions, which can be corrupting").

Although many of the Section 186 cases involve employer payments to union trust funds or an employer's withholding of employees' union dues as check-off payments, several courts have echoed the Supreme Court and Sixth Circuit's language regarding the unique fiduciary nature of collective bargaining and the purpose of Section 186. For instance, the Eastern District of Michigan demonstrated its awareness of the risk that the collective bargaining process can lend itself to possible abuse:

> Because of the abuses that have occurred in the cauldron of labor-management interplay which include misuse of labor organization funds, extortion by labor personnel, and attempts by business personnel to influence or exert pressure on union "personnel" particularly in financial form, restrictions on conduct between these two bodies and certain of their representatives have been imposed by Congress.

Reinforcing Iron Workers Local Union 426 v. Bechtel Power Corp., 463 F.Supp. 643, 645 (E.D. Mich. 1978) (Kennedy, J.) (quoting Costello v. Lipsitz, 547 F.2d 1267, 1272 (5th Cir. 1977)), *aff'd*, 634 F.2d 258 (6th Cir. 1981). Likewise, the District of Columbia Court of Appeals stated

that "[a]n important purpose of the LMRA was to prohibit special payments by employers and employer associations to employees, employee organizations, and officers of such organizations, except on conditions carefully prescribed by law." Wash. Post v. Wash.-Balt. Newspaper Guild, Local 35, 787 F.2d 604, 607 (D.C. Cir. 1986). Similarly, the Fifth Circuit Court of Appeals explained that "the purpose of § 302(a) [§ 186(a)] is to protect employers from extortion and to insure honest, uninfluenced representation of employees." United Steelworkers of Am., AFL-CIO v. United States Gypsum Co., 492 F.2d 713, 734 (5th Cir. 1974). In similar fashion, the Eastern District of Pennsylvania found that Section 186's "manifest purpose [was] to frustrate illicit employer-union links." Salvucci v. Gravure Div. of Triangle Publ'ns, Inc., 494 F.Supp. 126, 130 (E.D. Pa. 1980), *aff'd*, 649 F.2d 860 (3rd Cir. 1981). Thus, it is evident that Section 186 was intended to rein in the abuse and corruption that had arisen in the labor-management context, to protect against further dishonest conduct, and to help strengthen the fiduciary obligations owed by union representatives to their members.

In fact, a union representative can violate Section 186 without ever having intended to do so, which further underlines the high sensitivity to any possible improper conduct by union representatives. The United States Supreme Court seems to take somewhat of a strict liability approach to violations of Section 186, as evidenced by the following language: "As the statute reads, it appears to be a criminal provision, malum prohibitum, which outlaws all payments, with stated exceptions, between employer and representative." United States v. Ryan, 350 U.S. 299, 305 (1956). The Sixth Circuit further held that "[t]he fact that willful violations of [Section 186] are to be met with a criminal sanction does not render an unwitting violation lawful. Congress need not prescribe a criminal penalty, or any penalty for that matter, to make an action illegal."

Jackson Purchase Rural Elec. Coop. Ass'n v. Local Union 816, 646 F.2d 264, 266 (6th Cir. 1981). Similarly, the Second Circuit stated that "[t]he prohibitory sweep of the statute encompasses more than conscious wrongdoing." Int'l Longshoremen's Ass'n, AFL-CIO v. Seatrain Lines, Inc., 326 F.2d 916, 919 (2d Cir. 1964). Thus, any payment in violation of Section 186(a) or (b) that does not fall within one of the exceptions of Section 186(c) is considered to be unlawful, regardless of the parties' intentions.

Moreover, the risk of *conscious* wrongdoing between employers and union representatives seems to be an even greater concern than the unintentional, yet still unlawful, violations of Section 186. For instance, in Seatrain Lines, the Second Circuit faced a situation where the employer's use of pre-loaded cargo containers reduced the number of hours that union employees needed to work, so the union representatives demanded that the employer make payments to the union to compensate it for the loss of revenue derived from the employees' union dues. See id. at 918. The two parties disagreed about the payments, but the employer eventually agreed to pay a fee to the union for each pre-loaded cargo container, and it began making payments to a trust fund, pending a federal court's determination as to the legality of such payments. See id. The union contended that such an agreement, which settled the dispute between the parties, fell within the Section 186(c)(2) exception of an otherwise prohibited financial transaction. See id.

The Second Circuit held that such a voluntary agreement or compromise between the parties cannot "be considered a settlement of a claim within the meaning of the exception established by Section 302(c)(2) [Section 186(c)(2)]." Id. at 919. The court warned that "if the ILA's [union's] argument were accepted the proscriptive effect of the statute would be nullified,

6

since every payment by an employer to a union could be characterized as a settlement of a claim or demand made by the union." Id. at 919-20.[2] See also N.Y. Tel. Co. v. Communications Workers of Am. Local 1100, 256 F.3d 89, 92 (2d Cir. 2001) (citing same). The parties are therefore barred from merely pronouncing that they have independently settled a dispute by devising an agreement calling for employer payments to union officials, for such a non-adjudicative resolution is too prone to serve as a disguise for what is actually improper conduct. Thus, the scrutiny of a court or arbitrator is required in order for Section 186(c)(2) to apply to such employer payments made to unions or union officials.

Likewise, the First Circuit addressed concerns about parties that cloak improper conduct in the disguise of a dispute settlement. In Labor Relations Division of Construction Industries of Massachusetts, Inc. v. Teamsters Local 379, the court of appeals ruled that employer payments of fringe benefits to a union, even when made pursuant to a collective bargaining agreement, can

---

[2]The Second Circuit further held that "whenever some other provision of Section 302(c) [Section 186(c)] provides a more particularized exception, the transaction must satisfy the requirements of that other exception to be exempt." Seatrain Lines, 326 F.2d at 920. Therefore, in Seatrain Lines, the court found:
> [C]ontributions to union welfare funds which have been made pursuant to a collective bargaining agreement or an arbitration award, and might therefore be thought to fall within the exceptions of Section 302(c)(2) [Section 186(c)(2)], are to be scrutinized under the standards set out in Section 302(c)(5) [Section 186(c)(5)], which provides a particularized exception for payments to certain trust funds.

Id. However, the court ultimately found that the payments violated Section 186(c)(4), as that was the most particularized exception pertaining to the employer's payments "in lieu of a dues check-off." Id.

This Court finds the reasoning of the Second Circuit to be persuasive; however, the Court will not, at this time, determine if Section 186(c)(2) is the narrowest, most particularized exception that applies to the payments at issue in the instant case.

still be prohibited under Section 186.  156 F.3d 13, 15-16 (1st Cir. 1998).  The First Circuit found that Section 186(c)(2) did not apply, even though the contract was interpreted by an arbitrator, because the employer payments were not made in settlement or compromise of a claim or dispute, but instead were required payments under a previously negotiated collective bargaining contract.  See Teamsters Local 379, 156 F.3d at 16.  The court explained that allowing such a scheme to be excepted from Section 186 would mean that "any employer and union wishing to circumvent section 302's [Section 186's] prohibition on direct payments to labor organizations could simply contract to do so in plain terms, and then engage an arbitrator to interpret that contract.  We decline to read such an enormous loophole into the statute against its plain language."  Id.  Thus, the court re-emphasized that ongoing litigation or arbitration must directly precede any settlement between the parties.

     Similarly, the Northern District of Ohio, in Humility of Mary Health Partners v. Local 377 Chauffeurs, Teamsters, Warehousemen, and Helpers of America, also recognized that improper employer payments to unions could be dressed up as settlements of disputes; however, the court found that "this concern is obviated . . . [where such payments are made] pursuant to a validly issued arbitral award."  296 F.Supp.2d 840, 848 (N.D. Ohio 2003).  The court reasoned that "the Award greatly diminishes the opportunity for malfeasance by implementing a cooperative payment process and retaining the arbitrator's continuing jurisdiction over the actual payment."  Id.  Thus, in order to be excepted under Section 186(c)(2), the court calls for ongoing litigation or arbitration to ensure the integrity of the settlement and to allow for adjudicative scrutiny.  It seems that court judgments or arbitration awards, as long as preceded by that judicial body's examination of the specific circumstances and ongoing dispute, are the only means by

which such employer payments will be deemed lawful conduct under Section 186(c)(2)'s protection.

This Court finds such reasoning to be persuasive. In the labor-management context, the parties have high fiduciary duties and an accompanied risk of abuse. Section 186 was designed to prevent such fiduciary abuses by imposing a heavy burden on both parties when it comes to the settlement of a dispute or claim. While in other contexts the parties may be able to resolve such disputes on their own time, Section 186(c)(2) requires that the disputing parties either file a lawsuit or enter arbitration, where adjudicative scrutiny can be duly paid to the circumstances at hand.

Defendants, however, argue that the plain language of Section 186(c)(2) allows for voluntary settlements of claims or disputes that are reached by the parties themselves, without the oversight of a court or arbitration. Defendants cite to White v. National Football League, 836 F.Supp. 1458 (D. Minn. 1993). In White, the court found that "in the absence of fraud or duress, section 302(c)(2) [Section 186(c)(2)] does not require the court to examine the actual terms of a settlement of legitimate claims for purposes of determining whether such consideration is 'fair.'" 836 F.Supp. at 1494. Moreover, the court ruled that "[t]he general prohibition [of Section 186] is subject to express statutory exceptions set forth in section 302(c) of the Act, 29 U.S.C. § 186(c). Congress did not intend that the general prohibition prevent a union or employee representative from vindicating its legal rights as to an employer, and thus enacted the settlement exception, section 302(c)(2) [Section 186(c)(2)], which exempts adjudicated awards and judgments, and also payments arising out of the voluntary settlement of claims and disputes, from the general prohibitions of the Act." Id. at 1493. Thus, Defendants

argue that Section 186(c)(2) applies to any "payment or delivery of any money or other thing of value . . . in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress[,]" regardless of whether that resolution is reached by the parties themselves or through an adjudicated award or judgment.  See 29 U.S.C. § 186(c)(2).

     This Court does not find Defendants' argument to be persuasive for several reasons. First, the parties in White had been involved in ongoing, vigorous litigation over the past few years.  In fact, the court states that "[n]one of the parties or objectors . . . dispute that the licensing litigation settlement resolves a wide range of genuine legal controversies between the NFL [employer] and the NFLPA [union]."  White, 836 F.Supp. at 1493.  There is an established record of litigation, involvement by the court, and an actual "legal" dispute.  Thus, it follows that the "voluntary settlement" language mentioned in White does not refer to any "voluntary settlement" that the parties may assert, but instead to a "voluntary settlement of claims and disputes" between these two parties that were involved in ongoing, extensive litigation.  See id.

     Second, it would pave the way for the exception to swallow the rule if one interprets Section 186(c)(2) as allowing *any* "compromise, adjustment, settlement, or release of any claim."  As the Sixth Circuit explained, "[u]nder accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."  Lake Cumberland Trust, Inc. v. United States Envtl. Prot. Agency, 954 F.2d 1218, 1222 (6th Cir. 1992).  The Defendants' interpretation of Section 186(c)(2) would, in effect, render language in the first half of the exception—requiring a "judgment of any

court" or "decision or award of an arbitrator"—to be meaningless, for any employer and union official could avoid the exception's requirements by disguising an improper payment as their independent resolution of a purported dispute. Thus, the statute should be read to apply only to a settlement reached through an adjudicative judgment or award, for that interpretation breathes meaning into each word and provision of the exception.

Further, the final half of Section 186(c)(2)—"or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress"—surely relates back to the first half of the exception, which states "the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman." See 29 U.S.C. § 186(c)(2). To interpret the section as three separate parts—a court judgment, an arbitrator award, or any settlement whatsoever—would mean that the lawmakers included subsets of lawful conduct in the first half of Section 186(c)(2) but then put in the all-inclusive, overarching umbrella of any "compromise, adjustment, settlement, or release" in the last half of the section. This seems nonsensical, as the lawmakers would have just eliminated the first half of the exception—requiring an adjudicated judgment or award—and merely stated that any "compromise, adjustment, settlement, or release" reached by the parties was sufficient to qualify as excused conduct under Section 186(c)(2). This is not how the lawmakers constructed Section 186(c)(2), and the exception should therefore be interpreted to be consistent with its construction.

Third, the terms included in the second half of Section 186(c)(2)—"any claim, complaint, grievance, or dispute"—are indicative of the adjudicative process. Although the Defendants

11

point out that these terms can also carry non-labor meanings, the rub is that they are all legal terms, consistently used within the context of courtrooms and arbitration panels.  Thus, the selection of these terms further strengthens the statutory interpretation that any settlement or resolution must be achieved through an adjudicative process.

Lastly, as previously described, Section 186 was enacted amidst concerns of corruption and fiduciary abuse percolating between employers and union representatives.  Section 186 sought to grab the bull by the horns by expressly prohibiting improper payments in the labor-management context, save a few narrow exceptions.  To allow an employer and union representative to disguise an improper financial transaction as a settlement of a purported dispute would be a disservice both to the lawmakers who drafted the section, the public, and to the union employees who are the ones, in the end, shortchanged by such malfeasance.  Thus, Section 186(c)(2) places a heavy burden on any employer and union representative who engage in such conduct.  Litigation, coupled with adjudicative scrutiny, ensures that the union representatives are acting with integrity, loyalty, and uninfluenced representation of the union employees' best interests.

### III.     CONCLUSION

Based upon statutory interpretation, existing case law, and integrity of labor-management relations, this Court grants the Plaintiff's Motion for Reconsideration.  For the reasons stated above, the Court reverses its original ruling on this matter.  Accordingly,

IT IS ORDERED that Section 186(c)(2) applies only if the parties have reached a

resolution of a dispute or claim through the adjudicative process, meaning by a judgment of a court or an arbitrator's award.  Section 186(c)(2) offers no protective refuge for any parties that resolve a dispute through independent, informal negotiations held solely between the parties themselves.

>	____s/Bernard A. Friedman_____
>	BERNARD A. FRIEDMAN
>	CHIEF UNITED STATES DISTRICT JUDGE

Dated:  November 17, 2005
	Detroit, Michigan


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 17, 2005, by electronic and/or ordinary mail.

>	s/Carol Mullins
>	Case Manager